CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/5/2022
JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA LYNCHBURG DIVISION

| | | |
|---|---|---|
| STEVIE PRILLER, | ) | |
| | ) | |
| | ) | Civil Action No. ___6:22CV00046___ |
| *Plaintiff*, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| BLUE RIDGE ROCK FESTIVAL LLC, | ) | |
| | ) | |
| **SERVE**: R/A: Jonathan Slye | ) | |
| 4009 Murray Place | ) | |
| Lynchburg, VA, 24501-5003 | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AND | ) | |
| | ) | |
| PURPOSE DRIVEN EVENTS, LLC, | ) | |
| | ) | |
| **SERVE**: R/A: David C. Canfield | ) | |
| 2311 Wilson Blvd., Suite 500 | ) | |
| Arlington, VA, 22201 – 5422 | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

1.     Stevie Priller ("Ms. Priller" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendants Blue Ridge Rock Festival LLC ("Blue Ridge") and Purpose Driven Events, LLC ("PDE") (collectively "Defendants") under the Fair Labor Standards Act, 29 U.S.C. § 203 et seq. ("FLSA"), the Employee Retirement Income Security Act, 29 U.S.C. 18 § 1001 et seq. ("ERISA"), the Virginia Overtime Wage Act Va. Code Ann. § 40.1-29.2 ("VOWA"), the Virginia Wage Payment Act ("VWPA"), Va. Code § 40.1-29, Va. Code § 40.1-28.7:8, Virginia's whistleblower statute: Va. Code Ann. § 40.1-27.3, and Virginia common law.

## I.      INTRODUCTION

2.      This case involves violations of the FLSA, the ERISA, the VOWA, the VWPA, Va. Code § 40.1-28.7:8, and Virginia's whistleblower statute: Va. Code Ann. § 40.1-27.3, and retaliation committed by Defendants against whistleblower-plaintiff, Ms. Priller.  Plaintiff has evidence that Defendants, through their authorized agents: (1) failed to pay her the overtime wages she earned; (2) failed to provide her regular paystubs showing how her wages were calculated and which deductions were made; (3) required her to sign an illegal non-competition agreement; (4) interfered with her ability to receive benefits under her existing insurance Plan; (5) paid her in a manner that required her to pay a fee to receive the wages she earned; and (6) terminated her when she complained about these violations.

## II.     JURISDICTION AND VENUE

3.      This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq., the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 18 § 1001 et seq. ("ERISA"), the Virginia Overtime Wage Act ("VOWA"), Va. Code Ann. § 40.1-29.2, the Virginia Wage Payment Act ("VWPA"), Va. Code § 40.1-29, Virginia's statute forbidding non-competition restrictions on low wage employees, Va. Code § 40.1-28.7:8, and Virginia's whistleblower statute: Va. Code Ann. § 40.1-27.3.

4.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 1451(c), and 28 U.S.C. § 1331.

5.      This Court has supplemental subject matter jurisdiction over the claims arising under Virginia state law because they are so related to the federal claims that they form part of the same case or controversy.  28 U.S.C.§ 1367(a).

6.      Venue lies in the Western District of Virginia, Lynchburg Division, under 28 U.S.C. § 1391(b) & (c) because Blue Ridge Rock Festival LLC resides here and a substantial part of the events or omissions giving rise to the claim occurred here.

## III.   PARTIES

7.      Plaintiff, Stevie Priller, is an adult citizen of the United States of America and resident of the Commonwealth of Virginia.

8.      Defendants employed Plaintiff as a Social Media Assistant between February 6, 2020, and January 14, 2022.

9.      Defendant Blue Ridge Rock Festival LLC ("Blue Ridge"), is a Virginia limited liability company with its principal place of business located at 4009 Murray Pl, Lynchburg, VA, 24501 - 5003 and its principal office address registered at 4009 Murray Place, Lynchburg, VA, 24501 - 5003.  Jonathan Slye is the Chief Executive Officer of Blue Ridge.

10.     Defendant Purpose Driven Events, LLC ("PDE") is a Virginia limited liability company with its principal place of business located at 4009 Murray Pl, Lynchburg, VA, 24501 - 5003 and its principal office listed as: 28765 Single Oak Drive, Suite 150, Temecula, CA, 92590. Jonathan Slye is also the Chief Executive Officer of PDE.

11.     PDE purchased Phase 2 (a 31,000 sq. ft. facility in Lynchburg, Virginia now known as "the Ridge") in February 2021 for $3.5 Million and is an "umbrella organization for events led by Chief Executive Officer, Jonathan Slye."  (Https://theridgeva.com.)

## IV.   LEGAL FRAMEWORK

### A.  The Fair Labor Standards Act

12.     The Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 203 et seq., establishes minimum wage, overtime pay, record keeping, and employment standards for

employees in the private sector and in federal, state, and local government.  Defendants are subject to the FLSA's overtime requirements because their annual gross volume of sales is not less than $500,000.

13.     Employees earning less than $35,568 per year ($684/week) can only be considered "non-exempt" for purposes of the FLSA.  29 CFR § 541.300.

14.     Under the FLSA, non-exempt employees such as Ms. Priller must receive overtime pay for all hours worked over 40 hours in a workweek at a rate not less than time and one-half (1.5) their regular rate of pay that week.

15.     Under § 216(b) of the FLSA, "Any employer who violates the provisions of … section 207 of this title [concerning overtime wages] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages" in addition to attorney fees and costs.

### B. <u>The Employee Retirement Income Security Act ("ERISA")</u>

16.     The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 18 § 1001 et seq., was enacted to protect the interests of employee benefit plan participants and their beneficiaries.

17.     ERISA fiduciaries owe duties of loyalty and care to Plan beneficiaries.  <u>Hammer v. Johnson Senior Ctr., Inc.</u>, 2020 U.S. Dist. LEXIS 223169, *12-13 (W.D. Va. 2020).

18.     "These fiduciary obligations are 'the highest known to the law.'"  <u>Id.</u>

19.     Plan fiduciaries are personally liable for all losses a Plan beneficiary incurs as a result of any "breach[ of] any of the responsibilities, obligations, or duties imposed upon fiduciaries …."  <u>Id.</u>

20.     Plan fiduciaries are those named in the Plan documents and all persons who exercise authority or discretion with respect to the management or disposition of Plan assets or any "discretionary authority or discretionary responsibility in the administration of such plan," including the corporate employer and its agents.  Id. at *13-14.

21.     The corporate employer is a Plan fiduciary because it is responsible for remitting the employee contribution to the Plan and has the power to remove any Plan administrator who is not performing that task as required.  Id. at *24.

**C.  The Virginia Overtime Wage Act ("VOWA"), Va. Code Ann. § 40.1-29.2 et seq.**

22.     Under Va. Code Ann. § 40.1-29.2, employers who violate the FLSA are liable to their employees for the same damages and remedies provided under the FLSA as modified by Va. Code Ann. § 40.1-29(J).

23.     Under Va. Code Ann. § 40.1-29(J), "if an employer fails to pay wages to an employee in accordance with this section or § 40.1-29.2, the employee may bring an action, individually … against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G [8%], and reasonable attorney fees and costs."

24.     Moreover, "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section or § 40.1-29.2, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." Id.  "[A] person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.

25.     Establishing that a person acted knowingly shall not require proof of specific intent to defraud." Va. Code Ann. § 40.1-29(J).

**D.  The Virginia Wage Payment Act ("VWPA"), Va. Code § 40.1-29**

26.     Under Va. Code § 40.1-29, employers are required to timely pay non-executive employees on set dates and may not withhold any portion of wages earned without the employee's written permission.

27.     Employers violate Va. Code § 40.1-29 when they fail to pay their non-executive employees on the dates established.  See, e.g., Frank v. True Color Painters, LLC, 108 Va. Cir. 490 (Fairfax County October 4, 2021).

28.     Under Va. Code § 40.1-29(C), employers are forbidden from withholding "any part of wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee."

29.     In addition, "[o]n each regular pay date, each employer … shall provide to each employee a written statement, by a paystub or online accounting, that shows the name and address of the employer; the number of hours worked during the pay period if the employee is paid on the basis of (i) the number of hours worked or (ii) a salary that is less than the standard salary level adopted by regulation of the U.S. Department of Labor pursuant to § 13(a)(1) of the federal Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), as amended, establishing an exemption from the Act's overtime premium pay requirements; the rate of pay; the gross wages earned by the employee during the pay period; and the amount and purpose of any deductions therefrom." Id. (emphasis added.)

30.     "The paystub or online accounting shall include sufficient information to enable the employee to determine how the gross and net pay were calculated." Id.

**E.  Virginia's Statute Forbidding Non-compete Agreements with Low-Wage Employees, Va. Code § 40.1-28.7:8**

31.     Under Va. Code § 40.1-28.7:8(B), employers are forbidden from including covenants not to compete with "low-wage employees."

32.     During the period Ms. Priller worked for Defendants, employees earning less than $62,608 per year were considered to be "low-wage employees."

33.     Under Va. Code Ann.§ 40.1-28.7:8(E), employers are subject to a civil penalty of up to $10,000 for each violation of this statute.

34.     Employers are required to "post a copy of this section or a summary approved by the Department [of Labor] in the same location where other employee notices required by state or federal law are posted" and are subject to fines of up to $1,000 for continued violations of this requirement.

35.     Under Va. Code Ann.§ 40.1-28.7:8(D), employees whose employers included an illegal non-competition agreement in their employment contracts may file suit requesting the court to void the illegal non-competition agreement, along with "liquidated damages, and awarding lost compensation, damages, and reasonable attorney fees and costs."

**F.  Virginia's Whistleblower Statute, Va. Code § 40.1-27.3**

36.     Under Va. Code § 40.1-27.3, "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: [o]r a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor …."

37.     Under Va. Code § 40.1-27.3(C), "A person who alleges a violation of this section may bring a civil action in a court of competent jurisdiction within one year of the employer's

prohibited retaliatory action.  The court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs.

### G.  Bowman Claim under Virginia Common Law

38.     In Virginia, the at-will employment doctrine is not absolute.  One exception is the "public policy exception," commonly referred to as a "Bowman claim."

39.     An at-will employee asserting a wrongful discharge claim must identify a Virginia statute establishing a public policy that was violated by the employer.

40.     The statute must explicitly state a public policy of Virginia and the discharged employee must show that he or she is within the class of persons the statute is designed to protect.

41.     Under Bowman, an employee is entitled to compensatory and punitive damages when their employer retaliates against the employee for internally reporting unlawful conduct. Frank v. True Color Painters, LLC, 108 Va. Cir. 490 (Fairfax County Oct. 4, 2021).

42.     To prove a Bowman claim for punitive damages, "[a] plaintiff is not required to prove that the employer's improper motive was the sole cause of the wrongful termination."  Shaw v. Titan Corp., 255 Va. 535, 543 (Va. 1998).

43.     It is sufficient that the wrongful discharge occurred because of "factors that violate Virginia's public policy." Id. at 542.

### V.     STATEMENT OF FACTS

44.     Plaintiff, Ms. Priller, is a highly-talented marketer who was employed by Defendants between February 6, 2020, and January 14, 2022.

45.     Ms. Priller has experience as a Digital Media Manager for WPTS radio at the University of Pittsburg where she operated the company website and was in charge of social media promotion.

### Job Title and Responsibilities at Blue Ridge

46.     On or about February 6, 2020, Ms. Priller began working for Blue Ridge as a part-time Social Media Assistant.

47.     Ms. Priller was paid $10/hr. with a promised bonus of $1,000 if the Blue Ridge Rock Festival ("the Festival") proved to be "profitable."  (See **Exhibit 1**.)

48.     Ms. Priller never received the promised $1,000 bonus despite the success of the Festival.  In fact, Blue Ridge enjoyed so much success with the Festival that it purchased another entity, Rock with a Purpose LLC, for $3.5 Million the following year.

49.     On or about Nov. 27, 2020, Blue Ridge was so impressed with Ms. Priller's performance that it began paying her $500 per week as a salaried, part-time position.

50.     Pursuant to the commencement of this employment relationship, Blue Ridge's payroll processor, ADP, began processing Ms. Priller's paycheck and deducting funds on or about January 22, 2021.  Prior to this date, neither Blue Ridge nor PDE provided Ms. Priller with any paystubs or other accounting of the wages she earned.

51.     On or about February 26, 2021, Defendants were so pleased with Ms. Priller's performance in her part-time role that Defendants hired her to be their full-time Social Media and Marketing Coordinator.  (See **Exhibit 2**.)  In that capacity, she earned $30,000 per year.

52.     Because Ms. Priller's annual salary was less than $35,568, she could only have been considered a non-exempt employee for purposes of the Fair Labor Standards Act ("FLSA") and Va. Code Ann. § 40.1-29.2.

53.     Despite this clear prohibition, Defendants unlawfully treated Ms. Priller as an exempt employee by failing to pay her overtime when she worked more than 40 hours in a week.

54.     Incredibly, Defendants tracked Ms. Priller's hours (See **Exhibit 3**) in TICK, Defendants' time-tracking software, and knew she worked more than 40 hours in multiple weeks yet refused to pay her the additional overtime premiums she earned during those weeks.

55.     Defendants failed to pay Ms. Priller $1,105.16 in overtime wages she earned between April 5, 2021, and October 25, 2021.

56.     Not only did Defendants unlawfully treat Ms. Priller as an exempt employee under the FLSA and the VOWA, they also included an illegal non-competition agreement within her employment contract.  That provision states:

> For a period of one year from the termination of this Agreement, Employees shall not directly or indirectly engage in any business entity, or provide services to any business entity, that competes with Purpose Driven Events LLC and Blue Ridge Rock Festival, LLC's dealings within the United States of America.

(**Exhibit 2**.)

57.     Va. Code Ann.§ 40.1-28.7:8(B) expressly forbids the inclusion of non-competition agreements in contracts with "low-wage employees."

58.     At the time Defendants included this restriction in its contract with Ms. Priller, employees earning less than $62,608 per year were considered to be "low-wage employees."

59.     Because Ms. Priller was only paid an annual salary of $30,000, she was a low-wage employee.

60.      When Ms. Priller was first hired, she worked remotely from her home in Pennsylvania but was still a resident of Maryland.  Therefore, she initially filled out Maryland as her state of residence.

61.     In May 2021, Ms. Priller agreed to move to Virginia to work full-time for Defendants.

62.     Ms. Priller immediately notified Mr. Slye (Defendants' CEO), Terry Wecker (Defendants' Office Manager and Director of Human Relations), and other employees of Defendants that she was moving, requested time off to complete the move, and provided Ms. Wecker her new Virginia mailing address.

63.     Ms. Priller also posted about her move on Slack, the company's internal communication platform, after she closed on the Virginia property.

64.     Nearly all Defendants' staff, including Mr. Slye and Ms. Wecker, reacted to this notification.

65.     Ms. Wecker also texted Ms. Priller on or about June 2, 2021, to verify her new Virginia address.

66.     Despite these numerous notifications to responsible parties, Defendants continued to remit withheld wages to Maryland, not Virginia.

67.     When Ms. Priller received her W-2 for 2021, she saw that the withheld funds had been sent to the wrong state.  Ms. Priller notified several people (including, but not limited to, Ms. Wecker, Mr. Slye, and Jade Brunton) that her withheld wages continued to be erroneously sent to Maryland, not Virginia.

68.     These requests continued throughout the remainder of Ms. Priller's employment. (See **Exhibit 4**.)

69.     Despite these numerous demands, Defendants continued to remit withheld wages to Maryland, not Virginia.

11

70.     As a result, when Ms. Priller filed her 2021 taxes, she was required to pay the Commonwealth of Virginia the $641.00 that Defendants erroneously remitted to Maryland.

71.     During the time Ms. Priller worked for Defendants, she was a 22-year-old beneficiary of her mother's health insurance Plan administered by Aetna.

72.     On or about July 8, 2021, Ms. Priller received information concerning insurance benefits provided under an insurance Plan being administered by Anthem for Blue Ridge employees.  Those benefits included health, dental, and vision insurance.

73.     Ms. Priller immediately contacted her mother to compare those benefits with those offered under the Aetna Plan she was already covered by.

74.     Ms. Priller and her mother concluded the benefits of her current Aetna Plan were superior to those provided under the Anthem Plan.

75.     On or about July 10, 2021, Ms. Priller notified Defendants she did not want to receive benefits under the Anthem Plan.

76.     Unbeknownst to Ms. Priller, Blue Ridge had already included her as a beneficiary of the Anthem Plan despite her express rejection.

77.     Those benefits began to be provided as of July 1, 2021 – before Defendants even asked Ms. Priller if she wanted to be a beneficiary of the new Anthem Plan.

78.     When Aetna learned that Blue Ridge had included Ms. Priller as a beneficiary of the Anthem Plan, Aetna removed Ms. Priller as a beneficiary of her parents' Plan.[1]

79.     Because Ms. Priller received reduced benefits and had to start from $0 to pay her deductible before Anthem would begin paying benefits under the new Anthem Plan, Ms. Priller

---

[1] Under the terms of the Aetna Plan, adult beneficiaries between 18-26 years of age were only covered beneficiaries if they did not have insurance under another Plan.

incurred $2,024.35 in medical bills that her existing Aetna Plan would have paid but for Blue Ridge's ERISA violation.

80.     Blue Ridge was horribly mismanaged and became delinquent in numerous bills and other obligations.  (See **Exhibit 5**.)

81.     On or about December 10, 2020, after ADP cancelled Blue Ridge's account due to non-payment, Blue Ridge began paying Ms. Priller by wire transfer.

82.     Ms. Priller was required to pay a $15 fee to receive the wire transfers sent to her.

83.     On or about December 27, 2021, Ms. Priller participated in a meeting with Mr. Slye in which she voiced several concerns.  These included: 1) the erroneous remission of withheld wages to Maryland instead of Virginia; 2) Defendants' failure to provide paystubs for all paychecks issued after ADP discontinued processing payroll due to non-payment of outstanding balances; 3) reimbursement for Covid tests Ms. Priller purchased for staff during the Blue Ridge Rock Festival; and 4) Defendants' insistence on paying Ms. Priller by wire transfer, resulting in Ms. Priller paying a $15 fee to receive those funds.

84.     On January 3, 2022, Ms. Priller again notified those individuals of the erroneous withholding that had occurred and continued to occur and again asked them to remit withheld wages to Virginia, not Maryland.  (See **Exhibit 4**.)

85.     On January 8, 2022, Ms. Priller e-mailed Ms. Wecker to complain about not being paid on time, once again.  (See **Exhibit 6**.)  Ms. Priller further requested to be paid by a method other than by wire transfer because she was incurring a $15 fee per paycheck to receive those funds.

86.     Later that evening, Mr. Wecker responded, "Stevie we should have a phone call about this."  (Id.)

87.     On or about January 14, 2022 – less than a week after Ms. Priller's most recent complaint – Defendants notified Ms. Priller they were "laying off everyone" effective immediately.  Mr. Slye assured Ms. Priller he would call her as soon as her job became available again.

88.     By February 23, 2022, Defendants had re-hired almost all former employees except Ms. Priller.

89.     Ms. Priller attempted to contact Mr. Slye again to inquire about her job, to no avail.

90.     Despite Mr. Slye's assurances, Defendants have still not re-hired Ms. Priller.

## CAUSES OF ACTION

### COUNT I
### Violation of Fair Labor Standards Act, 29 U.S.C. § 203 et seq.,
### Failure to Pay Overtime

91.     Plaintiff re-alleges and incorporates by reference paragraphs 1-90 as if fully set forth herein.

92.     By virtue of the acts described above, Defendants knowingly failed to pay Ms. Priller $1,105.16 in overtime wages that she was entitled to receive.

93.     Moreover, while Mr. Priller kept track of the hours she worked, Defendants failed to satisfy their duties under the FLSA to keep track of the hours Ms. Priller and their other non-exempt employees worked.

94.     Under § 216(b) of the FLSA, Defendants are liable to Ms. Priller in the amount of $1,105.16, plus an additional $1,105.16 in liquidated damages.

95.     Under § 216(b) of the FLSA, Defendants are also liable to pay the attorney fees and costs Ms. Priller incurred pursuing a remedy in this matter.

## COUNT II
## Violation of Virginia Overtime Wage Act, Va. Code Ann. § 40.1-29.2

96.     Plaintiff re-alleges and incorporates by reference paragraphs 1-95 as if fully set forth herein.

97.     By virtue of the acts described above, Defendants knowingly withheld $1,105.16 in overtime wages that Ms. Priller earned while serving as an employee of Defendants.

98.     Under Va. Code Ann. § 40.1-29(J), Ms. Priller is entitled to recover from Defendants a minimum of $1,105.16 plus an additional $1,105.16 in liquidated damages, plus prejudgment at 8% along with the attorney fees and costs she incurred pursuing a remedy in this matter.

99.     However, because Defendants knowingly failed to pay Ms. Priller in accordance with state law, Defendants are liable to Ms. Priller for triple the amount of wages due ($1,105.16), plus prejudgment at 8% along with the attorney fees and costs she incurred pursuing a remedy in this matter.

100.     Defendants acted 'knowingly' because they had actual knowledge of the hours Ms. Priller worked and knew they were required to pay Ms. Priller in compliance with overtime laws yet failed to do so.

101.     Defendants are therefore liable to Ms. Priller for **$3,315.48** (triple $1,105.16), plus 8% interest from April 23, 2022, along with the attorney fees and costs she incurs pursuing a remedy in this matter.

## COUNT III
## Violations of the Employee Retirement Income Security Act, 29 U.S.C. 18 § 1001 et seq.,

102.     Plaintiff re-alleges and incorporates by reference paragraphs 1-101 as if fully set forth herein.

15

103.    Defendants are fiduciaries under the ERISA because they are the corporate employers who had the power to remove any Plan administrator who is not performing that function in accordance with the ERISA and other applicable law.

104.    Under 29 U.S.C. 18 § 1002(7), ERISA "participants" include "any employee or former employee of an employer … who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer …." (Emphasis added.)

105.    Ms. Priller was a "participant" of the Plan administered by Defendants because she was eligible to receive benefits under that Plan.  In fact, Ms. Priller did receive benefits under Defendants' Plan – albeit against her will.

106.    Under ERISA, Defendants owe duties of care and loyalty to Ms. Priller as a participant of the Plan they administered.

107.    Defendants breached their duties to Ms. Priller by adding her to their Plan without her consent against her express direction to the contrary.

108.    Defendants did that despite their full knowledge Ms. Priller was already a beneficiary of her parents' Plan and that she had rejected their offer to be included on Defendants' Plan.

109.    By virtue of the acts described above, Defendants caused Ms. Priller to be removed as a beneficiary of her parents' Plan and lose benefits thereby.

110.    As a result of being removed as a beneficiary of her parents' Plan, Ms. Priller incurred **$2,024.35** in medical bills that would have been paid by her parents' Plan but for Defendants' actions.

111.     Under ERISA, Defendants are liable for all losses Ms. Priller incurred as a result of these actions and Ms. Priller may recover the attorney fees and costs she incurred seeking a remedy for Defendants' violations.

## COUNT IV
## Negligence

112.     Plaintiff re-alleges and incorporates by reference paragraphs 1-111 as if fully set forth herein.

113.     Defendants owed a duty to Ms. Priller to use ordinary care to determine which employees wished to participate in their Plan and only enroll those employees who wished to be included.

114.     Defendants breached this duty to Ms. Priller by ignoring her express instructions to not be included as a Plan participant.

115.     Every person who acted to determine Ms. Priller's wishes and enroll employees in Defendants' Plan was an agent of Defendants acting within the scope of their employment. Therefore, Defendants are vicariously liable for these actions of their agents.

116.     As a direct and proximate result of Defendants' breach, Ms. Priller was removed as a beneficiary of her parents' Plan.

117.     As a result of Defendants' breach, Ms. Priller incurred $2,024.35 in medical bills that would have been paid by her parents' Plan but for Defendants' breach and is entitled to recover those expenses from Defendants.

## COUNT V
## Violation of Virginia Wage Payment Act, Va. Code Ann. § 40.1-29

118.     Plaintiff re-alleges and incorporates by reference paragraphs 1-117 as if fully set forth herein.

119.    By virtue of the acts described above, Defendants withheld $641.00 in wages from Ms. Priller but failed to remit them to the Commonwealth of Virginia, as required.

120.    Defendants also repeatedly paid Ms. Priller by wire transfer in violation of Va. Code Ann. § 40.1-29(B) despite her repeated demands they pay her by another method.

121.    Ms. Priller was required to pay a $15 fee to receive each of those wire transfers.

122.    Under Va. Code Ann. § 40.1-29(B), employers may only pay employees in cash, check, automatic direct deposit, or by crediting a prepaid debit card with the employee's consent.

123.    Employers violate Va. Code Ann. § 40.1-29(B) when they pay employees in a manner that requires their employees to pay a fee to obtain their wages.

124.    As a result of Defendants' repeated violations of Va. Code Ann. § 40.1-29(B), Ms. Priller suffered $45 in damages.

125.    Because Ms. Priller was not an executive employee, Defendants also violated Va. Code § 40.1-29 by failing to pay her on the established dates on which they agreed to pay her.

126.    Defendants' violations of Va. Code § 40.1-29 prevented Ms. Priller and other employees from timely paying their bills and caused automatic withdrawals to "bounce."

127.    Defendants paid Ms. Priller late seven times while she was employed by them, causing her $150 in late fees and $70 in NSF overdraft fees.

128.    Despite Ms. Priller's repeated complaints to Defendants and their agents about this subject, Defendants failed to consistently pay Ms. Priller on the dates they agreed to pay her.

129.    Defendants also failed to provide "a written statement, by a paystub or online accounting" of any kind between February 6, 2020, and January 22, 2021, and between December 10, 2021, and January 14, 2022.

130.    On those occasions when Defendants did provide paystubs, they failed to indicate "the number of hours worked during the pay period."

131.    Defendants were required to indicate the number of hours Ms. Priller worked on every paystub she received (as well as on those Defendants failed to provide) because she was paid less than $35,568, the "salary level adopted by regulation of the U.S. Department of Labor pursuant to § 13(a)(1) of the federal Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), as amended …."

132.    Defendants' acts also interfered with Ms. Priller's ability to determine the hours worked each week and the amount of overtime she was entitled to receive thereby.

133.    Under Va. Code Ann. § 40.1-29(E), employers who willfully violate these requirements commit a Class 1 misdemeanor for first offenses when the amount of withheld wages is less than $10,000.  Subsequent violations or violations of $10,000 or more are punished as Class 6 felonies.

134.    Under Va. Code Ann. § 40.1-29(J), employees may bring suit against the employer to recover the withheld wages and are entitled to the amount withheld, plus "an additional equal amount as liquidated damages, plus prejudgment interest [of 8%], and reasonable attorney fees and costs."

135.    Affected employees are entitled to triple damages, attorney fees, and costs for knowing violations.  Id.

136.    "Establishing that a person acted knowingly shall not require proof of specific intent to defraud." Id.

137.    If an employer knows it is not paying employees on time, fails to provide regular paystubs reflecting all required information, or pays employees in a manner that requires them to

pay a fee to receive the wages they earned, the employer knowingly violates Va. Code Ann. § 40.1-29, even if those violations result from gross incompetence instead of malice.

138.    Ms. Priller suffered $906 in damages as a result of Defendants' violations of Va. Code Ann. § 40.1-29.

139.    Under Va. Code § 40.1-29(J), Ms. Priller is entitled to **$2,718** (triple $906), plus reasonable attorney fees, and costs.

### COUNT VI
### Violation of Virginia's Statute Prohibiting Noncompetition Agreements
### with Low-wage Employees, Va. Code § 40.1-28.7:8

140.    Plaintiff re-alleges and incorporates by reference paragraphs 1-139 as if fully set forth herein.

141.    Under Va. Code § 40.1-28.7:8(B), employers are forbidden from "enter[ing] into … a covenant not to compete with any low-wage employee."

142.    Defendants included a covenant not to compete in Ms. Priller's employment contract.

143.    Ms. Priller was a "low-wage employee" as that term is defined in Va. Code § 40.1-28.7:8(A) because she earned less than $62,608 per year.

144.    Employers who violate Va. Code § 40.1-28.7:8(B) are "subject to a civil penalty of $10,000 for each violation."  Va. Code § 40.1-28.7:8(E).

145.    Employers are also required to post a copy or approved summary of Va. Code § 40.1-28.7:8 in the same area where other required employee notices are posted.  Va. Code § 40.1-28.7:8(G).  Violators of this requirement "shall be issued by the Department a written warning for the first violation, shall be subject to a civil penalty not to exceed $250 for a second violation, and

shall be subject to a civil penalty not to exceed $1,000 for a third and each subsequent violation as determined by the Commissioner." Id.

146.    Under Va. Code § 40.1-28.7:8(D), low wage employees may file suit against the offending employer or former employer seeking to void the noncompete agreement and obtain other available relief, including injunctive relief, lost compensation, liquidated damages, other damages, attorney fees, and costs.

147.    Defendants violated Va. Code § 40.1-28.7:8 when they failed to post a copy or approved summary of that statute in any area where employee notices are posted.

148.    Defendants further violated Va. Code § 40.1-28.7:8 by requiring Ms. Priller to sign a contract that included a covenant not to compete.

149.    Defendants' violations of Va. Code § 40.1-28.7:8 deterred Ms. Priller from seeking employment with competitors of Defendants.

150.    Because Ms. Priller believed she could not work for "any entity" that competes with Defendants anywhere in the entire country for one year from the date she ceased working for them, she accepted inferior positions of employment earning less money than she could have earned had she not been deterred from seeking such positions.

151.    After being terminated by Defendants on January 14, 2022, Ms. Priller worked a series of part-time positions, first as a concessions worker for the Lynchburg Hillcats earning $11/hr. and then as a Box Office Associate with the Academy Center of the Arts earning ($12/hr.). In total, Ms. Priller has earned $1,740.14 from these positions.

152.    On July 25, 2022, Ms. Priller secured a 1-month position as a Recruiter and Team Lead for Highline Medical Solutions that will pay a total of $3,000.  As of the date of this filing, Ms. Priller has earned $750.00 from working in this position.

153.    Thus, Ms. Priller has earned a total of $2,490.14 working inferior replacement positions since being terminated from her employment with Defendants.

154.    Ms. Priller earned $30,000 per year (plus overtime) working for Defendants and would have earned at least this same amount had she been permitted to seek work for one of Defendants' competitors.

155.    Ms. Priller only earned $2,490.14 since Defendants terminated her employment compared with $16,250.00 that she would have earned but for the illegal non-competition agreement Defendants included in her employment contract.

156.    Ms. Priller has lost $13,759.86 in wages between the date Defendants terminated her employment and continues to lose wages as a result of this illegal non-competition agreement Defendants included in her employment contract.

157.    Under Va. Code § 40.1-28.7:8(D), Ms. Priller is entitled to ask this Court to void the illegal non-competition agreement, award her $13,759.86 in lost wages, an equal amount in liquidated damages, reasonable attorney fees, and costs.

### COUNT VII
### Violation of Virginia's Whistleblower Statute, Va. Code § 40.1-27.3

158.    Plaintiff re-alleges and incorporates by reference paragraphs 1-157 as if fully set forth herein.

159.    By virtue of the acts described above, Defendants retaliated against Ms. Priller in violation of Va. Code § 40.1-27.3 when they terminated her employment because she complained about the aforementioned violations of state and federal law.

160.    Under Va. Code § 40.1-27.3(C), Ms. Priller is entitled to reinstatement and compensation for wages and benefits she lost following her unlawful termination, along with pre-judgment interest of 6%, attorney fees, and costs.

161.    Ms. Priller lost $16,250.00 since her unlawful termination on January 14, 2022.

162.    Defendants are therefore liable to Ms. Priller for $16,250, plus 6% interest from January 14, 2022, along with all additional wages she loses between August 5, 2022, and the date judgment is entered plus the attorney fees and costs she incurs pursuing a remedy in this matter.

## COUNT VIII
### Bowman Claim – Virginia Common Law

163.    Plaintiff re-alleges and incorporates by reference paragraphs 1-162 as if fully set forth herein.

164.    By virtue of the acts described above, Defendants retaliated against Ms. Priller as a direct result of the complaints she made concerning Defendants' violations of the state and federal laws outlined above.

165.    These complaints included, but were not limited to, violations of Va. Code § 40.1-29 – a claim which gives rise to a Bowman Claim under Virginia common law because Va. Code § 40.1-29 establishes a public policy of the Commonwealth of Virginia and Ms. Priller is within the class of people Va. Code § 40.1-29 was established to protect.  Frank, 108 Va. Cir. at 491-492.

166.    Ms. Priller is entitled to both compensatory and punitive damages under her Bowman Claim because Defendants' actions of terminating Ms. Priller for reporting violations of Va. Code § 40.1-29 are "willful, malicious, oppressive, wanton, or reckless."  Id. at 492.

167.    Ms. Priller is therefore entitled to the $16,250 in lost wages she sustained and up to $350,000 in punitive damages.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ms. Priller prays that judgment be entered in her favor and against the Defendants as follows:

a.      That Defendants pay Plaintiff compensatory damages for underpayment of wages in the amount of $1,105.16, plus an additional $1,105.16 in liquidated damages (or $2,210.32 if the Court holds Defendants' violation willful), all at 8% interest from January 14, 2022, until paid;

b.      That Plaintiff be reinstated to her position as a Social Media Assistant at Blue Ridge or be paid an appropriate amount in front-pay in lieu of reinstatement;

c.      That Defendants pay Plaintiff $2,204.00 in unreimbursed medical expenses that their violations of ERISA and/or their negligence caused Plaintiff to incur;

d.      That Defendants pay Plaintiff $2,718 (triple $906.00) for their violations of Va. Code Ann. § 40.1-29.2;

e.      That this Court declare the covenant not to compete that Defendants included in their employment contract with Plaintiff to be void and unenforceable;

f.      That Defendants pay Plaintiff $13,759.86 for their violations of Va. Code § 40.1-28.7:8 and an equal amount in liquidated damages;

g.      That Defendants pay Plaintiff $16,250.00 for their violations of Va. Code § 40.1-27.3;

h.      That Defendants pay punitive damages of $350,000 pursuant to Bowman v. State Bank of Keysville, 229 Va. 534 (1985) and the common law of the Commonwealth of Virginia;

i.      That Plaintiff be awarded all reasonable attorney fees and costs, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 203 et seq., the Employee Retirement Income Security Act, 29 U.S.C. 18 § 1001 et seq., Va. Code Ann. § 40.1-29, Va. Code Ann. § 40.1-27.3, and Va. Code § 40.1-28.7:8;

j.      That Plaintiff be awarded post-judgment interest; and

k.      That the Court award such other and further relief as is just, equitable, and proper.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

August 5, 2022

                        Stevie Priller

                   By:  /s/ Christopher E. Collins
                       Christopher E. Collins

                       *Counsel for Plaintiff*

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiff*